UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KIMBERLY CASE DAVIS

VERSUS

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY

CIVIL ACTION

12-446-JJB-SCR

**<u>NOTICE</u>**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, August 18, 2014.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KIMBERLY CASE DAVIS

VERSUS

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY

CIVIL ACTION

NUMBER 12-446-JJB-SCR

## MAGISTRATE JUDGE'S REPORT

Plaintiff Kimberly Case Davis brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner") denying her applications for disability insurance and supplemental security income benefits ("SSI").

Based on the applicable standard of review and the analysis which follows, the Commissioner's decision should be affirmed.

### Standard of Review

Under § 405(g), judicial review of a final decision of the Commissioner denying disability and SSI benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91

S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

A claimant has the burden of proving that he or she suffers

from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the ALJ to apply a five step sequential evaluation to each claim for benefits. 20 C.F.R. §§ 404.1520; 416.920. In the five step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations;[1] (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work. *Masterson*, 309 F.3d at 271.

The burden of proving disability rests on the claimant through the first four steps. At the fourth step the Commissioner analyzes whether the claimant can do any of his past relevant work. If the claimant shows at step four that he is no longer capable of

---

[1] Listed impairments are descriptions of various physical and mental illnesses and abnormalities generally characterized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listed impairment he must demonstrate that it meets all of the medical criteria specified in the listing. An impairment that exhibits only some of the criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 529-32, 110 S.Ct. 885, 891-92 (1990); 20 C.F.R. §§ 404.1525; 416.925.

3

performing past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in some type of alternative work that exists in the national economy. *Myers*, supra. If the Commissioner meets this burden the claimant must then show that he cannot in fact perform that work. *Boyd*, 239 F.3d at 705.

In 1996 Congress amended the Social Security laws related to alcoholism and drug addiction. The effective date of the amendments was March 29, 1996. *Brown v. Apfel*, 192 F.3d 492 (5th Cir. 1999); *Adams v. Apfel*, 149 F.3d 844, 846 (8th Cir. 1998). Under the amended legislation and regulations, alcohol or drug addiction might preclude a finding of disability. 42 U.S.C. §§ 423(d)(2)(c) and 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535(a) and 416.935(a); *Brown*, 149 F.3d at 497-499. The regulations mandate consideration of whether these addictions are contributing factors material to the determination of disability only after the ALJ finds the claimant disabled at step five. *Id.* The key factor is whether the claimant would still be found disabled if she stopped using drugs or alcohol.[2] The claimant has the burden of proving that drug or alcohol addiction is not a contributing factor material to her disability. *Brown*, 149 F.3d at 498; *Wheat v. Barnhart*, 318 F.Supp.2d 358, 362 (M.D.La. 2004).

---

[2] *Brown,* 192 F.3d at 499; 20 C.F.R. §§ 404.1535(b)(1)-(2)(i) & (ii) and 416.935(b)(1)-(2)(i) & (ii).

**Background and Claims of Error**

Plaintiff was 41 years old at the time of the administrative law judge's ("ALJ") decision. Plaintiff graduated from high school, attended college and then obtained training to become a licensed practical nurse. Plaintiff worked as a licensed practical nurse from 1989 until she was injured in a motor vehicle accident in March 2007. AR pp. 252, 309, 313-14, 318, 334-35, 338, 340-41. Plaintiff had an extensive history of diagnosis/treatment for polysubstance abuse and dependence.[3] In the 2007 car accident the plaintiff suffered fractures to both legs, a knee injury and a calcaneus fracture to her right ankle.[4] In January 2008 the plaintiff also had bilateral shoulder dislocations, and elbow fractures.[5] Plaintiff alleged that since March 2007 she has been disabled and unable to engage in substantial gain activity because of mental problems and the physical problems resulting from the shoulder dislocations and injuries sustained in the car accident.

Plaintiff filed an initial application for disability and SSI benefits in April 2007, and a second application for benefits in May 2010. AR pp. 252, 257, 291, 298. After an administrative

---

[3] Plaintiff had a long history of drug abuse/dependence and treatment. AR pp. 416-19, 664-66, 741, 760-812, 816-31, 842-50, 866, 894. The most recent records of treatment for the plaintiff's drug addiction are from the last quarter of 2010.

[4] See, e.g., AR pp. 420-23, 426-43.

[5] See, e.g., AR pp. 501-02, 505-07, 656-59, 722-26.

hearing the first application for benefits was denied by the ALJ. However, the Appeals Council granted the plaintiff's request for review and remanded the case for a rehearing and a new decision. With regard to the second application, which was still pending at the hearing level, the Appeals Council ordered that it be consolidated with the first application and treated as a duplicate claim.

After remand the ALJ held another hearing at which the plaintiff, her mother and vocational expert Thomas Mungall testified. After the second hearing the AlJ issued an unfavorable decision. AR pp. 9-29.[6] The ALJ found at the second step that the plaintiff had the following combination of mental and physical impairments that were severe – status post right calcaneus fracture and plateau fracture on the left, status post bilateral humeral fractures, mood disorder (bipolar or other depressive disorder), polysubstance abuse/dependence and rule out borderline personality disorder.[7] With this combination of impairments, the ALJ determined that the plaintiff had the following residual functional capacity ("RFC"):

> the claimant is able to lift and carry ten pounds

---

[6] Plaintiff exhausted her administrative remedies before filing this action for judicial review. The ALJ's decision is the Commissioner's final decision for purposes of judicial review.

[7] At the third step the ALJ found the plaintiff's impairments did not satisfy all the requirements of any listed impairment. AR pp. 15-17. Plaintiff did not challenge this finding.

6

occasionally and five pounds frequently, stand and walk
two hours in a workday and sit six hours in a workday,
with the ability to push and pull limited by the weight
she is able to lift and carry; however, she is unable to
sustain the performance of even this level of work on a
regular and continuing full-time basis.

It is apparent from the ALJ's RFC finding that the plaintiff was disabled - unable to perform her past work as an LPN or any other work in the national economy. AR pp. 17-21. Given this conclusion the ALJ then had to evaluate whether the plaintiff's substance abuse disorder was a contributing factor material to the determination of disability, i.e., whether the plaintiff would still be found disabled if she stopped using drugs and alcohol. This is an issue on which the plaintiff has the burden of proof.[8]

The ALJ determined that if the plaintiff stopped abusing drugs, she would: (1) continue to have severe mental (mood and personality disorders) and physical (orthopedic) impairments; (2) have the same RFC for less than a full range of sedentary work, but limited to work that is not complex and requires no more than limited interaction with the public; and (3) continue to be unable to perform her past employment as an LPN. Mungall testified that given the plaintiff's age, education and work experience, and the RFC determined by the ALJ, the plaintiff would be able to perform the requirements of representative occupations such as data entry keyer and assembler. In other words the plaintiff would not be

---

[8] *Brown,* 192 F.3d at 499; 20 C.F.R. §§ 404.1535(b)(1)-(2)(i) & (ii) and 416.935(b)(1)-(2)(i) & (ii).

unable to work if she stopped her substance abuse. AR pp. 28-29.

Plaintiff claimed the following errors committed by the ALJ: (1) contrary to the regulations and without good cause to do so, the ALJ improperly rejected the physical restrictions assessed by the plaintiff's treating physician, Dr. Richard Rathbone; (2) the ALJ not only rejected the physical restrictions assessed by Dr. Rathbone he also declined to adopt the assessment of the agency's reviewing source, therefore, no evidentiary choices exist which support the RFC finding of the ALJ; and, (3) the ALJ's error in determining the plaintiff's RFC means that the vocational testimony relied on by the ALJ cannot support his finding at the fifth step that the plaintiff can do other work. In Plaintiff's Memorandum in Support of Appeal she noted that all of her claims of error relate to the physical restrictions attributable to her physical impairments.[9]

Review of the administrative record as a whole and the analysis below demonstrates that the plaintiff's claims of error are without merit, and there is no basis to reverse the Commissioner's final decision that the plaintiff is not disabled.[10]

---

[9] Plaintiff explained this was the reason she did not summarize any of the evidence related to her mental impairments and substance abuse. Record document number 11, p. 3.

[10] The evidence discussed and cited in this report is only that evidence necessary to resolve the plaintiff's claims of error and properly apply the standard of judicial review. However, the entire 894 page administrative record has been reviewed. The court
(continued...)

**Analysis**

**The ALJ did not err by improperly rejecting without good cause the restrictions assessed by Dr. Rathbone.**

Plaintiff argued that the ALJ improperly rejected the opinion of Dr. Rathbone stated in a letter dated September 10, 2009[11] and failed to comply with the regulations in weighing the evidence. This claim of error is not supported by the record; the ALJ did not reject Dr. Rathbone's opinion. The ALJ properly did not fully credit Dr. Rathbone's opinion after examining it in light of the objective findings contained in all of the medical records. Review of all the medical tests, treatment records, and other evidence demonstrates that the ALJ had good cause to discount Dr. Rathbone's opinion.[12] For example, the records showed that the plaintiff

---

[10](...continued)
notes that the record contains many duplicate medical records.

[11] AR p. 755. In the letter, addressed to the plaintiff's attorney, Dr. Rathbone stated:
> Ms. Davis continues with ankle pain and swelling. In this regard, I would advise against her being on her feet for more than 15 minutes at a time. Insofar as sitting is concerned, she should, whenever possible, elevate the right ankle in an angled upward position to alleviate chronic swelling. Use of an ankle brace continues.
>
> The claimant is status post closed reduction ob bilateral should dislocation. She continues to have difficulty with use of either hand for gross manipulation. It is my recommendation that she limit this to an infrequent basis, at best. Lifting/carrying of even ten pounds requires use of both hands.

[12] Although the opinion and diagnosis of a treating physician should generally be given considerable weight in determining
(continued...)

9

successfully healed from the injuries to her upper and lower extremities that she sustained in 2007 and 2008. The only residual effects were some limited range of motion of her right ankle, hip and lumbar spine reported in November 2008. Dr. Rathbone's treatment notes and the other medical records are devoid of any notations that the plaintiff had pain, swelling, or other symptoms related to her extremities that would support his conclusions.[13] Because there was competing first-hand medical evidence, the ALJ also was not required to evaluate Dr. Rathbone's opinion using all the factors in the regulations.[14] Nevertheless, the ALJ more than adequately explained how he weighed Dr. Rathbone's opinion and why he decided not to fully credit it – because it was not supported by the doctor's own treatment records, the plaintiff's hearing testimony, or the reports of Dr. Linda Stewart and the treating

---

[12](...continued)
disability, it is well established that a treating physician's opinions are not conclusive and may be assigned little or no weight when good cause is shown. The ALJ may discount the weight of a treating doctor's medical opinion when it is conclusory, unsupported by medically acceptable clinical, laboratory or diagnostic techniques, or is otherwise unsupported by the evidence. *Newton*, 209 F.3d at 455-56. An ALJ is free to reject the medical opinion of any physician when the evidence supports a contrary conclusion. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981).

[13] See, e.g., AR pp. 489-90, 506-10, 569, 555, 558, 584-85, 588, 589-91, 746-47, 756, 772, 778, 818, 829, 847-50, 853-55, 857-62, 864.

[14] *See, Newton*, 209 F.3d at 458; *Walker v. Barnhart*, 158 Fed.Appx. 534 (5th Cir. 2005).

orthopedic doctors.  AR pp. 17-19.

The ALJ complied with the relevant legal standards in weighing the evidence, particularly the opinion of Dr. Rathbone, and substantial evidence supports the ALJ's conclusions.

### The ALJ's physical RFC finding was supported by substantial evidence.

Plaintiff asserted that there are no evidentiary choices to support the ALJ's RFC determination.[15]  Plaintiff argued that because the ALJ did not adopt the physical restrictions assessed by William R. Bailey,[16] the agency's single decision maker, and did not rely on the opinion of Dr. Rathbone, the ALJ impermissibly relied on his own medical opinion to determine her RFC.

This argument is not supported by the record or the case law cited by the plaintiff.  Review of the record and the ALJ's decision shows that he considered all the evidence relevant to the plaintiff's RFC.  After doing so he determined that the evidence did not support fully crediting any one statement or opinion as to the plaintiff's limitations.  The agency's single decisionmaker assessed that the plaintiff had an RFC for light work.  However, the ALJ partially credited the reports of Drs. Stewart and Rathbone to reach the finding that the plaintiff could perform a reduced

---

[15] Plaintiff did not challenge the portion of the ALJ's finding related to limitations caused by her mental impairment.

[16] AR pp. 559-66.

11

range of sedentary work.[17] This was not error; this was the ALJ fulfilling his role as the trier of fact by considering and weighing all the evidence, resolving conflicts in the evidence and drawing reasonable inferences from the evidence.[18] The ALJ is not required to include all the limitations stated in one or another report. After weighing all the evidence and resolving conflicts in the evidence, the ALJ may fully or partially credit reports/opinions to reach his findings, which must be upheld if supported by substantial evidence. The evidence credited by the ALJ from the reports of Bailey, Dr. Stewart and Dr. Rathbone constitute substantial evidence to support the ALJ's RFC determination.

Based on the record in this case, the cases relied on by the

---

[17] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §404.967(a); §416.967(a).

Under the regulations, if someone can do light work, the agency will find they can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §404.967(b); §416.967(b).

[18] It is the task of the ALJ as the finder of fact to weigh the evidence. When evidence cuts both ways, it is not the court's job on judicial review to reweigh the evidence. As long as there is substantial evidence in the record as a whole supporting the ALJ's finding, it must be upheld. *See*, *Greenspan v. Shalala*, 38 F.3d 232, 240 (5th Cir. 1994); *Short v. Astrue*, 2013 WL 655020 (N.D. Tex. Feb. 5, 2013).

plaintiff, *Williams v. Astrue*[19] and *Ripley v. Chater*,[20] are not persuasive. In *Ripley,* the only evidence in the record regarding the claimant's ability to work came from the claimant's own testimony, and there was a total absence of any medical source statement/reports regarding the effects of the claimant's condition on his ability to work. In these circumstances the Fifth Circuit found that the ALJ's RFC determination was not supported by substantial evidence.[21] In *Williams* the ALJ rejected opinions from three treating physicians who stated that the claimant could perform sedentary work, and instead found the claimant was capable of light work based only on medical evidence describing the condition of the claimant's lumbar and cervical spine. Citing *Ripley*, court found in these circumstances the ALJ's RFC finding lacked substantial evidence.

The analysis above demonstrates that: (1) the ALJ did not rely on his own unsupported opinions as to the limitations resulting from the plaintiff's physical impairments; and, (2) the plaintiff's claim that the ALJ's RFC determination lacks substantial

---

[19] 355 Fed.Appx. 828, 832 (5th Cir. 2009).

[20] 67 F.3d 552, 557-58 (5th Cir. 1995).

[21] The Fifth Circuit stated in *Ripley* that the absence of a medical source statement describing the types of work the claimant is still capable of performing does not in itself make the record incomplete. In such a situation, the court's inquiry focuses on whether the decision of the ALJ is supported by substantial evidence in the existing record. *Ripley*, 67 F.3d at 557.

evidentiary support is without merit.

**The vocational testimony constituted substantial evidence to support the ALJ's finding at the fifth step.**

Plaintiff's claim that the vocational testimony did not support the ALJ's finding at the fifth step, rested on the claim that the ALJ's physical RFC determination was not supported by substantial evidence. Since the RFC finding was supported by substantial evidence, there is no basis for the plaintiff's argument that the Commissioner failed to meet her burden of proof at the fifth step. The ALJ concluded that the plaintiff could not do the full range of sedentary work and had some limitations due to her mental impairment. Therefore, the ALJ properly obtained and relied on Mungall's testimony.[22] This evidence constitutes substantial evidence to support the finding that the plaintiff was not disabled. There would be a significant number of jobs in the national economy the plaintiff could perform if she stopped the substance abuse.

## Conclusion

A careful review of the administrative record as a whole supports finding that: (1) the proper legal standards were applied

---

[22] It is well established that if a claimant has nonexertional limitations the ALJ is required to obtain vocational expert testimony to support the findings at step five. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986); *Vaughn v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).

to evaluate the plaintiff's claim for disability and SSI benefits; and, (2) substantial evidence supports the Commissioner's conclusion that the plaintiff is not disabled.

## RECOMMENDATION

It is the recommendation of the magistrate judge that, under sentence four of 42 U.S.C. § 405(g), the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security, denying the application of plaintiff Kimberly Case Davis for disability insurance and supplemental security income benefits be affirmed and this action be dismissed.

Baton Rouge, Louisiana, August 18, 2014.

*Stephen C. Riedlinger*
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE